**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES P. ASHLOCK, III,

      Defendant - Appellant.

No. 14-3013
(D.Ct. No. 2:05-CR-20027-JWL-DJW-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.
_____

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

submitted without oral argument.

Defendant-Appellant James P. Ashlock III appeals his sentence following

revocation of his supervised release. In challenging only the substantive

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

reasonableness of his sentence, he contends his sentence is presumptively unreasonable. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Ashlock's twenty-one-month term of imprisonment and fifteen-month term of supervised release.

## I. Factual and Procedural Background

On November 30, 2005, a jury convicted Mr. Ashlock of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He received a 120-month sentence and a three-year term of supervised release conditioned, in part, on his cooperation with his probation officer, submission to drug testing, prohibition on possessing or using illegal drugs, and participation in approved programs for substance abuse and mental health. Prior to beginning his supervised release on November 8, 2013, the probation officer was notified that while still at a halfway house, Mr. Ashlock submitted positive urine samples for marijuana on November 1 and 4, 2013. A few days later, on November 19, 2013, while on supervised release, he tested positive for methamphetamine. On November 21 and 25, 2013, Mr. Ashlock reported for drug testing but was unable to provide the required urine samples, which are considered "stalled" urine analyses. On December 9, 2013, Mr. Ashlock reported to his probation officer and admitted he used methamphetamine on December 6, 2013, as well as a couple of times around the period of the urine analysis stalls. He was referred for weekly mental health counseling, and the conditions of his supervised release

were modified to add a "search" condition for his self, home, and other property on reasonable suspicion of contraband or evidence of violation of the conditions of his supervised release.

On December 13, 2013, he failed to report for dual diagnosis counseling at a mental health center. On December 18, 2013, he again failed to provide a urine sample for testing and was directed to report to the probation office at 9:00 a.m. on December 20, 2013. He failed to timely report and, on the same day, also missed another scheduled dual diagnosis counseling session at the mental health center. When Mr. Ashlock did report to the probation office at 4:00 p.m. that day, he admitted he used methamphetamine on December 19, 2013. He was directed to return on December 23, 2013, for application of a sweat patch but called that day, saying he was running late and did not know when he would make it to the probation office. When he appeared later that day, he was arrested.

The government filed a petition for revocation of Mr. Ashlock's supervised release based on his numerous violations. At a hearing held January 10, 2014, Mr. Ashlock stipulated to those violations. While Mr. Ashlock sought a sentence involving only an in-patient, dual diagnosis program at a mental health center, the government opposed such a sentence, pointing out Mr. Ashlock: 1) previously acted out with violence due to his drug use, including while incarcerated; 2) continued to use illegal drugs or misused authorized medication while in prison; 3) failed to participate in a drug treatment program, either on supervised release

or while in prison; 4) continued to use illegal drugs on supervised release; and 5) failed to take responsibility for his firearm offense.  It argued a punishment of only in-patient treatment would risk his relapsing and using methamphetamine again, thereby creating a potential consequence of violence.  It then requested a sentence of twenty-one months in prison, where Mr. Ashlock could get drug treatment, as well as a term of supervised release.

In revoking Mr. Ashlock's supervised release and imposing a twenty-one-month sentence with fifteen months supervised release, the district court stated it believed such a sentence was appropriate and sufficient, but not greater than necessary, to carry out Congress's intent with respect to the 18 U.S.C. § 3553(a) sentencing factors.  It further stated:

> I'm usually amenable to suggestions that one who has not had in-patient treatment and whose problems are perhaps deeply [seated] should perhaps get that opportunity [for in-patient treatment] at some point if that might be of assistance.  But I'm persuaded that Mr. Ashlock's difficulties are more deep [seated] than would be addressed in a relatively brief in-patient treatment.  I think part of his difficulties are ones that he needs to make sure he understands the price that he pays if he does not live up to what the expectations for him are, and he will be back on supervision again once he leaves incarceration, and he needs to be sure then that he will follow those.
>
> Second, I think ... during his incarceration, he will have the opportunity for drug treatment, and he needs to take advantage of it, and he needs to do the things necessary to make himself available for it.  And finally, in the end, I'm simply persuaded that it is too great of a risk to public safety to permit Mr. Ashlock – given his criminal history and given his ... deep [seated] issues here, to permit him to remain at large, and to continue to be a threat to the public safety.

While the district court acknowledged Mr. Ashlock may not be eligible for the intensive residential drug abuse program, it noted he could qualify for other drug treatment programs while incarcerated which he failed to commit to or take advantage of in the past. Finally, in revoking supervised release and imposing the twenty-one-month sentence and term of supervised release, the district court stated it considered the violation report, the case file, counsel remarks and Mr. Ashlock's statement, as well as the sentencing factors and advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") policy statements.

## II. Discussion

Mr. Ashlock appeals his twenty-one-month sentence and fifteen-month term of supervised release following revocation of his supervised release. In challenging the substantive reasonableness of his sentence, he contends his sentence is presumptively unreasonable in light of his mental health issues, the availability of in-patient drug treatment, and his amenability to rehabilitation, as well the fact he was employed during his release and stayed in contact with his probation officer. Rather than a lengthy sentence, he asserts he should have received in-patient drug treatment but, instead, the district court failed to address his root problem of drug abuse.

Under the Federal Rules of Criminal Procedure and 18 U.S.C. § 3583, when a person violates the conditions of supervised release, the district court may modify the conditions of release or revoke the term of supervised release and

impose prison time.  *See United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004); 18 U.S.C. § 3583(e)(2), (3); Fed. R. Crim. P. 32.1(b); U.S.S.G. § 7B1.3(a). In imposing a sentence following revocation of supervised release, the district court is required to consider both the Guidelines Chapter Seven policy statements as well as the factors provided in 18 U.S.C. § 3553(a).[1]  *See United States v. Cordova*, 461 F.3d 1184, 1188 (10th Cir. 2006).  "The court may, after considering the factors set forth in" § 3553(a)(1)-(7), "revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense ...."  18 U.S.C. § 3583(e)(3).  In this case, it is undisputed the advisory Guidelines range for Mr. Ashlock on revocation is twenty-one to twenty-seven months imprisonment.  *See* U.S.S.G. §§ 7B1.3(a)-(b), 7B1.4(a).

Our appellate review for reasonableness is for abuse of discretion and is deferential.  *See United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013); *United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011).  Generally, we will not reverse a sentence following revocation of supervised release if the record establishes the sentence is "reasoned and reasonable."  *United States v.*

---

[1]  The Chapter Seven policy statements include advisory Guidelines ranges for sentences following revocation of supervised release.  *See generally* U.S.S.G. Ch. 7 *and* §§ 7B1.3, 7B1.4.  With respect to the § 3553(a) sentencing factors, they include, in part, not only the nature of the offense, but the history and characteristics of the defendant, as well as the need for the sentence to provide adequate deterrence and protect the public.  *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006); 18 U.S.C. § 3553(a).

*Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005). A "reasoned" sentence is one that is "procedurally reasonable," while a "reasonable" sentence is one that is "substantively reasonable." *See McBride*, 633 F.3d at 1232. Mr. Ashlock contests only the substantive reasonableness of his sentence. "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (internal quotation marks omitted). A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable. *See United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010) (internal quotation marks omitted). In making these determinations, we review the district court's factual findings for clear error and its legal conclusions de novo. *See Ruby*, 706 F.3d at 1225.

In this case, the district court considered the sentencing factors and advisory Guidelines and stated its reasons for imposing a twenty-one-month sentence and a term of supervised release. Specifically, it stated its belief a within-Guidelines sentence was necessary for Mr. Ashlock to understand the seriousness of his violations; to deter him from future acts of violence or violations of such release; to ensure he took advantage of the opportunity in prison for drug treatment, which he failed to do in the past; and to make certain he follows the conditions of his release in the future. In so doing, it clearly

rejected Mr. Ashlock's argument only in-patient drug treatment was necessary and, instead, relied on government counsel's argument that a sentence was necessary based on his history of repeated noncompliance with respect to the terms of his supervised release; failure to participate in drug counseling or drug programs, either in prison or during supervised release; and the risk he would relapse and use methamphetamine again, thereby creating a potential consequence of violence, as previously exhibited, which would pose a risk to public safety.

As a result, it is clear the district court took into account the 18 U.S.C. § 3553(a) sentencing factors, including Mr. Ashlock's criminal history and personal characteristics, as well as the issues of deterrence and the public's safety. The district court did not, as Mr. Ashlock contends, fail to address his root problem of drug abuse. Instead, it noted his problems were more deep-seated than just his drug abuse, and, in addressing his drug use, it explained he could take advantage of drug treatment programs while in prison.

We further note that in merely one and one-half months, from when his supervised release began to the time of his arrest, Mr. Ashlock violated the conditions of his supervised release multiple times, demonstrating his flagrant disregard of the conditions imposed. These violations included his failure, on two occasions, to attend a mental health and drug treatment program, and there is nothing in the record to suggest he ever attended this program while on release or that he desires, or is inclined to seek, help. As a result, there is no assurance Mr.

Ashlock will adhere to a drug treatment program outside of prison, and he certainly has not demonstrated, as he alleges on appeal, that he is amenable to rehabilitation outside of further incarceration.

Considering all of the circumstances presented, we cannot say Mr. Ashlock's sentence is unreasonable or otherwise arbitrary, capricious, whimsical, or manifestly unreasonable. This is apparent, even in light of his mental health issues, the availability of in-patient drug treatment, and the fact he was employed while on release or, as he alleges on appeal, cooperated with his probation officer (despite his failure to timely report or provide urine samples). As a result, we are fully satisfied the sentence and supervised release imposed are reasonable.

III. Conclusion

Accordingly, we **AFFIRM** Mr. Ashlock's twenty-one-month sentence and fifteen-month term of supervised release.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge